IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INDIGO OLIVE SOFTWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No.  14 C 8157 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| THE COUNTRY VINTNER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Indigo Olive Software, Inc. filed a complaint against defendant The Country Vintner, Inc. in the Circuit Court of DuPage County, Illinois, alleging breach of contract. After removing the case to this court based on diversity of citizenship, defendant filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, claiming that defendant did not establish minimum contacts with Illinois to fall within its jurisdiction. In the alternative, defendant seeks to dismiss the case based on forum non conveniens. For the reasons discussed below, the court grants defendant's motion to dismiss.

**BACKGROUND**[1]

Plaintiff is a software company, incorporated in Kentucky, with its offices located in Wheaton, Illinois, where its principal shareholder and Chief Executive Officer ("CEO") resides. Defendant is a Virginia corporation with its executive offices located in Ashland, Virginia. In February 2014, defendant contacted plaintiff about providing software services for defendant in connection with its ongoing software implementation project. In the initial stages, the contract

---

[1]The facts are taken primarily from plaintiff's complaint and its exhibits and are accepted as true for purposes of the instant motion. Felland v. Clifton, 682 F.3d 665, 670 (7th Cir. 2012).

negotiations took place via email and telephone conversations between defendant's Vice President of Information Technology and plaintiff's President and CEO.  As the terms of the software license agreement were being finalized, defendant informed plaintiff that it would have "a few comments" on the agreement.  Plaintiff directed defendant to send its comments to plaintiff's attorney in Kentucky for review.  Defendant complied with this request by forwarding its comments to the Kentucky attorney on March 10, 2014. On March 14, 2014, the Kentucky attorney provided defendant with his own comments.  On March 18, 2014, the parties finalized a two-year contract under which plaintiff, through the performance of its Georgia-based technical support team, would develop software for defendant to enhance the automation of defendant's field sales force.

The contract called for plaintiff to provide, install, customize, and configure the software over the course of two years. This work was to be done by plaintiff's technical team in Atlanta. The contract automatically renewed for one-year terms unless the parties agreed to terminate it. At the time the contract was finalized, plaintiff had not yet completed its implementation plan. After plaintiff represented to the defendant that it had finished the plan, the parties executed a Cost of Ownership document that amended the delivery time of the software implementation. Plaintiff's CEO asked that defendant send that document via email or fax to a Kentucky fax number.  Plaintiff also requested that defendant send payment required by the contract to Prospect, Kentucky.

During the course of planning the implementation, defendant had indicated that it wanted the software to be turned over for testing by June 14, 2014.  Plaintiff indicated via email that it would make its best efforts to comply with defendant's timeline.  Plaintiff's CEO, along with

2

plaintiff's Georgia-based technical support team, worked on the project diligently until June 16, 2014, at which point plaintiff notified defendant it would not be able to meet the requested deadlines. In a conference call on June 26, 2014, in which defendant indicated it wanted to terminate the contract, plaintiff responded that it would invoke the thirty-day cure clause in the contract to deliver the project by July 26, 2014. On July 7, 2014, defendant sent a letter to plaintiff's CEO in Illinois, terminating the contract.

## **DISCUSSION**

Defendant moves to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(2), arguing that this court lacks personal jurisdiction over it. Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). When ruling on a motion to dismiss for lack of personal jurisdiction, the court accepts as true "all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." Felland v. Clifton, 682 F.3d 665, 672 (7th Cir. 2012). This court has jurisdiction over a non-resident, non-consenting defendant in a diversity case if Illinois state courts would have jurisdiction. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003). An Illinois state court has personal jurisdiction when authorized by: (1) the Illinois long-arm statute; (2) the Illinois Constitution; and (3) the Due Process Clause of the United States Constitution. Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 939 (7th Cir. 2000). The Illinois long-arm statute authorizes courts to exercise jurisdiction to the fullest extent allowed by the Illinois and federal Constitutions. 735 ILCS 5/2–209(c); Hyatt Int'l Corp., 302 F.3d at 714. Therefore, the inquiry into personal jurisdiction collapses into an examination of whether

3

jurisdiction over defendant complies with the test as set forth in International Shoe Co. v. Washington, 326 U.S. 310 (1945), which requires that defendants, although not required to be physically present in the territorial jurisdiction of the court, to have minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" embodied in the Due Process clause of the Fourteenth Amendment. Int'l Shoe Co., 326 U.S. at 316 (internal quotations omitted).

The test varies depending on whether plaintiff asserts specific or general jurisdiction. General jurisdiction applies when a non-resident defendant has "continuous and systematic business contacts" in a forum state. Kohler Co. v. Kohler Int'l, Ltd., 196 F. Supp. 2d 690, 696 (N.D. Ill. 2002) (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). In the instant case, plaintiff asserts specific jurisdiction over defendant. Specific jurisdiction refers to instances in which the defendant's contacts with the forum state "directly relate to the challenged conduct or transaction." Tamburo v. Dworkin, 601 F.3d 693, 702 (7th Cir. 2010). A federal court has specific personal jurisdiction when, "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." Id., citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Importantly, the defendant's conduct and contacts in the forum state must be substantial enough to make it foreseeable that it could be haled into court there. Northern Grain Mktg., LLC v. Greving, 743 F.3d 487, 492 (7th Cir. 2014). The purposeful-availment requirement demands that a defendant's contacts in the forum state "demonstrate a real relationship with the state with respect to the transaction." Id. at 493.

4

Plaintiff alleges that defendant established minimum contacts with Illinois because defendant purposely directed its activities to a company located in Illinois and became an "active" purchaser of goods and services from that company. By initiating communication and continuing to exchange telephone calls and emails with this company, plaintiff argues that defendant deliberately engaged in activities in Illinois such that it is not unreasonable to require it to submit to the burdens of litigation in that state.

Defendant argues that it did not establish minimum contacts with Illinois such that it could reasonably anticipate it would be haled into court here. Defendant contends that the contract was negotiated and executed in Virginia and clearly states that Virginia law shall govern. Further, defendant argues that actual performance on the contract occurred in Virginia and Georgia by defendant's agents and plaintiff's technical support team. And finally, defendant notes that at least part of plaintiff's argument rests on the presumption that future performance would have taken place in Illinois had the project not been terminated, which defendant argues is not relevant to this motion. For these reasons, defendant claims that it did not purposefully avail itself of Illinois law and, therefore, the court lacks specific personal jurisdiction over it. The court agrees.

Plaintiff finds it significant that defendant first approached plaintiff, thus initiating the relationship. Defendant does not dispute that it made this initial contact. The question as to which party solicited the transaction "has long been considered pertinent to the constitutional propriety of personal jurisdiction." Madison Consulting Grp. v. South Carolina, 752 F.2d 1193, 1202-03 (7th Cir. 1985). The solicitation of the transaction, however, is only one of many factors a court must analyze to determine personal jurisdiction. To decide whether a defendant

5

has established minimum contacts within the forum state, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King Corp., 471 U.S. at 479. Evaluation of these factors is necessary because the Supreme Court has emphasized the need for a "highly realistic" approach to personal jurisdiction analysis that recognizes that a contract is most often an "intermediate step serving to tie up prior business negotiations with future consequences." Id., (quoting Hooperston Canning Co. v. Cullen, 318 U.S. 313, 316 (1943)).

Prior to the finalization of the contract, the parties communicated via email and telephone. Plaintiff's CEO states that he was present in Illinois for all of these communications and that he prepared and sent various drafts of the contract, including the final draft, via email from Illinois. Yet, defendant notes that, at least on one occasion, it was directed by plaintiff to send its comments on the draft agreement to plaintiff's Kentucky lawyer, which it did. The Kentucky lawyer then replied to defendant with his own comments on the draft agreement. Significantly, the initial draft of the contract sent by plaintiff provided not only for Kentucky law to govern the parties' contract but also for defendant to consent to exclusive personal jurisdiction and venue in the state and federal courts in Jefferson County, Kentucky. In its comments on that initial draft, defendant indicated that it wanted Virginia law to govern and the forum-selection clause to be removed. In the final contract, the parties consented to Virginia law as governing, and the forum-selection clause was deleted.

This evidences that during negotiations the parties contemplated the future consequences of litigation and agreed that the laws of a state other than Illinois should govern. Plaintiff has provided no evidence that Illinois law was contemplated as governing law. To the contrary,

6

plaintiff's first draft of the contract evidences that, had defendant not amended the original contract, the parties would have been bound to litigate in a Kentucky court.  In the end, the final contract contained only a choice-of-law provision and not a forum-selection clause.  Although a choice-of-law provision "standing alone would be insufficient to confer jurisdiction," it may hold weight when the record indicates that the defendant negotiated that provision.  Burger King Corp. 471 U.S. at 482; see also Purdue Research Found., 338 F.3d at 786.  The record in the instant case provides that evidence.  As stated, the parties contemplated both Kentucky law and Virginia law, but not Illinois law, as governing if future litigation were to ensue.  In the end, the parties agreed that Virginia law would govern.

Further, the only mention of Illinois in the contract is one term providing for all notices, requests, demands, and other communications required or permitted under the agreement to be directed to plaintiff at its Illinois offices.  Terms stating that work would be performed in Illinois or that a final product would be sent to defendant from Illinois are notably absent.  A defendant's knowledge that the plaintiff's company has its principal office in a certain state and that correspondence can be directed to that office is not alone sufficient to avail itself to the laws and protections of that state.  As the Seventh Circuit has concluded, "[C]ontracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum."  Northern Grain Mktg., 743 F.3d at 490, citing Purdue Research Found., 338 F.3d at 781 (internal quotations omitted).

The parties' course of dealing also fails to fulfill the minimum contacts requirement.  At all times during communication between the parties, defendant's agents were located in Virginia and plaintiff's CEO was in Illinois.  Frequently, defendant's agents were communicating

exclusively with plaintiff's technical support team in Georgia, which was working to customize the final software product. All communication between defendant and plaintiff's CEO took place via email and telephone. Defendant's agents never traveled to Illinois, nor did defendant ever request that plaintiff's CEO travel to Virginia to discuss the project, which has been considered an important factor in finding existence of minimum contacts in other cases. See Madison Consulting, 752 F.2d at 1194-95. Additionally, after the contract was executed, plaintiff's CEO requested that defendant fax the signed Cost of Ownership document to a Kentucky fax number and send payment to Prospect, Kentucky. The sole payment on the contract was, in fact, sent to Kentucky. These facts strongly indicate that neither the terms of the contract nor the course of dealing created sufficient contacts with Illinois.

The Seventh Circuit recently concluded that the district court lacked personal jurisdiction over a non-resident defendant who simply entered into a contract with an Illinois plaintiff. See Northern Grain Mktg., 743 F.3d at 496. The court indicated that the it uses Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., 597 F.2d 596 (7th Cir. 1979), as a benchmark for resolving questions of personal jurisdiction in a contractual dispute. Northern Grain Mktg., 743 F.3d at 494; see also Madison Consulting Grp., 752 F.2d at 1200. In Lakeside, the Seventh Circuit found that a non-resident defendant failed to establish minimum contacts with Wisconsin, even though it contracted and placed a purchase order with a Wisconsin manufacturer and the terms of the contract explicitly stated that the plaintiff would manufacture and ship the goods from its plant in Milwaukee. Although Lakeside has been distinguished and even criticized several times, it has never been overruled. Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr., 536 F.3d 757, 763 (7th Cir. 2008). Northern Grain reiterated, "when a defendant's contacts with the

forum state have been as—if not more—limited than those of the defendant in <u>Lakeside</u>, this court has denied personal jurisdiction." <u>Id.</u>, (citing <u>Madison Consulting Grp.</u>, 752 F.2d at 1200 (internal quotations omitted)).

Although the defendant in <u>Lakeside</u> did not initially solicit contact with the plaintiff, the defendant entered into the contract with the plaintiff knowing that goods would be produced and shipped from the forum state. It was apparent to the defendant that the majority of the contract would be performed in that state. The record in the instant case confirms that defendant's contacts with Illinois were more limited than those in <u>Lakeside</u>. Defendant admits to soliciting the initial contact with plaintiff, but the contract fails to state that any work would be done by the plaintiff in Illinois or that any goods or services would be provided directly to defendant from Illinois. Indeed, the record reveals that most, if not all, of plaintiff's substantive work was performed in Georgia. Plaintiff even requested that payment for services be directed to somewhere other than Illinois.

For these reasons, the court concludes that defendant did not establish the requisite minimum contacts with Illinois to be haled into court here, and plaintiff has failed to meet its burden in establishing a prima facie case of personal jurisdiction. Consequently, defendant's motion to dismiss is granted.[2]

---

[2]Because the court concludes that it lacks personal jurisdiction over defendant, it need not reach defendant's alternate argument that the case be dismissed for forum non conveniens. The court notes, however, that the doctrine of forum non conveniens is applicable only to cases in which one of the parties is not a United States citizen. <u>Hyatt Int'l Corp.</u>, 302 F.3d at 717.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is granted.


**ENTER:**     **June 3, 2015**

                                                                _____
                                                                **Robert W. Gettleman**
                                                                **United States District Judge**